

# In the Missouri Court of Appeals
## Eastern District

**DIVISION ONE**

| | | |
|---|---|---|
| In the Interest of:  J.J.M. | ) | No. ED112433 |
| | ) | |
| Appellant. | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| | ) | |
| | ) | Honorable Vincent Johnson |
| | ) | |
| | ) | Filed: April 29, 2025 |

J.J.M. ("Juvenile") appeals the judgment of the Family Court Division of the Circuit Court of St. Charles County finding that Juvenile committed acts that, if committed by an adult, would have constituted one count of unlawful possession of drug paraphernalia, Section 579.074;[1] two counts of felony possession of a controlled substance, Section 579.015; and one count of felonious unlawful use of a weapon, Section 571.030.[2]  Juvenile raises four points on appeal, challenging the sufficiency of the evidence for each of these findings.[3]  We affirm.

---

[1] All statutory citations are to RSMo (2000).

[2] The circuit court also found that Juvenile committed acts that, if committed by an adult, would have constituted one count of fourth-degree assault, Section 565.056, and one count of felonious resisting a lawful stop, Section 575.150. Juvenile does not appeal these two findings.

[3] Juvenile in each point alleges the circuit court both clearly erred and abused its discretion in overruling his motion for judgment of acquittal and entering its findings that he had committed acts that, if committed by an adult, would have constituted criminal offenses.  Juvenile also alleges insufficient evidence existed to support the circuit court's findings.  Juvenile's points impermissibly group together multiple, independent claims of error. *Jackson v. Sykes*, 686 S.W.3d 393, 396-97 (Mo. App. E.D. 2024).  These multifarious points are noncompliant with Rule 84.04(d) and preserve nothing for our review.  *Id*.  However, this Court, in its discretion, may review all, some, or none of a multifarious point relied on.  *Griffitts v. Old Republic Ins. Co.*, 550 S.W.3d 474, 478 (Mo. banc 2018).  In the argument portion of his brief under each point, Juvenile solely argues there was insufficient evidence.  Thus, we limit our review to the sufficiency of the evidence.

*Factual and Procedural Background*

On October 22, 2023, Trooper R.W.,[4] of the Missouri State Highway Patrol, initiated a traffic stop on U.S. 61 in Lincoln County, Missouri, after he observed a car exceeding the posted speed limit of 60 miles per hour. The car was traveling at 96 miles per hour. The car pulled over and came to a stop on the shoulder of the highway. Trooper R.W. approached the passenger's side of the car and asked the driver for his name, date of birth, and proof of insurance for the vehicle. The driver, Juvenile, stated he did not have his driver's license with him, but provided his name and date of birth. Juvenile also told Trooper R.W. that the car was a rental and provided the title of the vehicle. Juvenile did not provide a rental agreement.

Trooper R.W. observed that Juvenile seemed very nervous. He thus asked headquarters to send a backup unit. Trooper A.P. arrived shortly thereafter. Trooper R.W. asked Trooper A.P. to get his spike strips because he thought Juvenile might try to flee. Trooper A.W. did so and placed the strips under the rear passenger tire of Juvenile's car.

Trooper R.W. asked Juvenile to turn off the car and hand over the key. Juvenile turned off the car and started to hand the key to Trooper R.W. However, when Trooper R.W. tried to gain control of Juvenile's right arm, Juvenile pulled away from the trooper, started the car, and pulled away. Juvenile took off traveling north on U.S. 61 at a high rate of speed, in excess of 100 miles per hour. Trooper R.W. returned to his patrol vehicle and initiated pursuit. Juvenile then turned his car around at a cross over and proceeded south on U.S. 61. While motoring southbound, Juvenile was still traveling at a high rate of speed. He began making unsafe passes on the right shoulder around several vehicles. Trooper R.W. discontinued the pursuit once Juvenile began to make these unsafe passes, due to the danger to the public. Juvenile then crossed the median and

---

[4] The personal identifying information of witnesses has been omitted pursuant to Section 509.520 (RS Mo. Supp. 2023).

began traveling southbound in the northbound lanes of U.S. 61., eventually crossing into St. Charles County. Trooper R.W. reinitiated pursuit. Juvenile was still traveling at about 100 miles per hour. Another trooper set up spike strips on the highway and the tires on Juvenile's car were successfully spiked. Juvenile's car slowed and moved to the right shoulder. Trooper R.W. positioned his patrol vehicle in front of Juvenile's car. Juvenile struck Trooper R.W.'s patrol vehicle with his car. Trooper R.W. was not injured but his rear bumper was damaged. Juvenile's car then ran off the road and hit a fence. After hitting the fence and coming to a stop, Juvenile exited his car and fled on foot. Trooper E.R. apprehended Juvenile, took him into custody, and returned Juvenile and his backpack to Trooper R.W. Trooper R.W. read Juvenile the *Miranda* warnings and placed Juvenile in the front seat of his patrol car.[5]

Trooper R.W. then searched the backpack seized from Juvenile. Inside he found a 9-mm handgun, a black mask, a digital scale, and latex gloves. Trooper R.W. also found a sealed package from a manufacturer/distributor that stated the items inside contained THC. Other troopers searched Juvenile's car. Trooper A.P. found "three to four bricks of turf-wrapped bricks" underneath the spare tire. Trooper A.P. cut open one of the bricks with his knife and immediately recognized the odor of marijuana. Trooper A.P. seized the bricks and packaged them as evidence. The evidence was conveyed to the lab for testing.

Juvenile Officer filed a petition in the circuit court alleging that Juvenile had committed eight delinquency offenses. Specifically, the petition alleged Juvenile engaged in conduct that, were he an adult, would constitute one count of the class A misdemeanor of fourth-degree assault, Section 565.056; one count of the class E felony of resisting a lawful stop, Section 575.150; one

---

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966) "requires that those taken into police custody be informed that have the right to remain silent, that anything they say can be used against them and that they have the right to counsel before submitting to interrogation." *State v. Dexter*, 954 S.W.2d 332, 337 (Mo. banc 1997).

count of the class D felony of first-degree tampering, Section 569.080; one count of the class D misdemeanor of unlawful possession of drug paraphernalia, Section 579.074; three counts of the class D felony of possession of a controlled substance, Section 579.015 (one for possession of over 35 grams of marijuana, one for possession of tetrahydrocannabinol (THC), and one for possession of synthetic marijuana); and one count of the class E felony of unlawful use of a weapon, Section 571.030. Juvenile Officer later filed a Second Amended Petition that charged the same offenses with the exception of one of the counts of possession of a controlled substance (synthetic marijuana), which was dismissed. The case proceeded to an adjudication hearing on the second amended petition.[6]

Juvenile Officer called five witnesses to testify at the adjudication hearing. Troopers R.W., A.P., and E.W. testified as to the events surrounding the traffic stop, Juvenile's flight, the troopers' pursuit, the apprehension and arrest of Juvenile, as well as the searches of Juvenile's backpack and car. Two criminalists from the Missouri State Highway Patrol Crime Laboratory also testified. A criminalist from the firearm and tool mark section testified regarding the handgun seized from Juvenile. The criminalist identified the handgun as a Ruger P95. Tests showed that the handgun was capable of detonating cartridges, meaning the handgun met the definition of a firearm.[7] Criminalist A.S., ("Criminalist"), who works in drug chemistry, testified regarding three bags of plant material that the Criminalist tested. Criminalist identified the material in all three bags as being part of the plant genus cannabis. Criminalist also tested one of three cartridges containing thick liquid and identified the liquid as containing THC.

---

[6] "The juvenile proceeding is bifurcated into an adjudication phase and dispositional phase." *P.D.E. v. Juv. Officer*, 669 S.W.3d 129, 132 (Mo. banc 2023). "The purpose of the adjudication hearing is to determine whether the allegations in the petition or motion to modify are established." *Id*. (internal quotation omitted). "The purpose of the dispositional hearing is twofold; it exists to determine: (1) the legal and physical custody of the juvenile, and (2) the services, treatment and placement necessary to facilitate the care, protection and discipline of the juvenile." *Id*.

[7] The criminalist explained that "detonating a cartridge" is when the firing pin strikes the primer, which will ignite the gunpowder and cause the projectile to exit the firearm.

After the close of Juvenile Officer's case in chief, Juvenile moved the circuit court for a judgment of acquittal. The circuit court granted that motion with respect to the tampering charge in Section 5.a of the Second Amended Petition. In all other respects, the circuit court denied Juvenile's motion. Juvenile did not present any evidence. Juvenile Officer then informed the court she would not be presenting any further evidence, and the adjudication hearing concluded. The circuit court then pronounced its decision regarding adjudication, finding that Juvenile had committed the remaining seven charges in the petition. Specifically, the circuit court pronounced:

> So, the Court at this time will find that it has jurisdiction to adjudicate over this matter and specifically find that the juvenile in violation of Section 5.b, c., d., e., f., and g. of the second amended petition will show that there's probable cause to believe that the juvenile did in fact commit the crimes as stated in the second amended petition. The adjudication is therefore in favor ... we will take jurisdiction of the case. Do we want to set the case now for a disposition?[8]

A recess was then held for counsel to confer regarding disposition. The circuit court proceeded to disposition later that same day. The circuit court placed Juvenile in the custody of Juvenile's mother, subject to court supervision and the rules of supervision, which included a requirement that Juvenile complete substance use and counseling assessments.

This appeal follows.

### Standard of Review

Juvenile proceedings are reviewed in the same manner as other court-tried cases. *Int. of T.P.*, 667 S.W.3d 224, 227 (Mo. App. E.D. 2023). This Court will affirm the circuit court's judgment unless the judgment is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id*. "In juvenile proceedings, 'due

---

[8] Section 5.b was the fourth-degree assault allegation; Section 5.c was the unlawful use of a weapon allegation; Section 5.d was the resisting a lawful stop and arrest allegation; Section 5.e was the possession of a controlled substance (THC) allegation; Section 5.f was the possession of a controlled substance (marijuana) allegation; and Section 5.g was the drug paraphernalia (rolling papers) allegation.

process requires the standard of proof to be beyond a reasonable doubt in the adjudicatory stage when a juvenile is charged with an act that would constitute a crime if committed by an adult.'" *Id.* (quoting *C.G.M., II v. Juv. Officer*, 258 S.W.3d 879, 882 (Mo. App. W.D. 2008)).

When reviewing a challenge to the sufficiency of the evidence, this Court determines whether there was sufficient evidence from which a reasonable fact finder could have found the defendant guilty beyond a reasonable doubt. *T.P.*, 667 S.W.3d at 227. We view the evidence and the reasonable inferences which may be drawn therefrom in the light most favorable to the verdict, and we ignore all evidence and inferences to the contrary. *Id.*

### *Discussion*

### Point I: Possession of Drug Paraphernalia

Juvenile alleges the circuit court erred in overruling his motion for judgment of acquittal and entering a judgment finding that he committed what would be, were he an adult, the class D misdemeanor of unlawful possession of drug paraphernalia.

Section 579.074 defines the offense of unlawful possession of drug paraphernalia as follows:

> A person commits the offense of unlawful possession of drug paraphernalia if he or she knowingly uses, or possesses with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body, a controlled substance or an imitation controlled substance in violation of this Chapter or Chapter 195.

Juvenile Officer in Section 5.g of the Second Amended Petition alleged that Juvenile:

> knowingly possessed **rolling papers**, which were drug paraphernalia, knowing of their presences and nature, with intent to use them to prepare, pack, repack, store, contain, ingest, inhale, or otherwise introduce into the human body a controlled substance or imitation controlled substance.

6

Juvenile alleges there was no evidence presented at the adjudication hearing that he possessed rolling papers, and argues Juvenile Officer was required to prove he possessed rolling papers because it was alleged in the Second Amended Petition.[9]

Juvenile correctly notes no rolling papers were offered as exhibits at the adjudication hearing. Juvenile also correctly notes there was no testimony by the troopers that Juvenile possessed rolling papers or that rolling papers were seized on October 22, 2023, the date of the incident. Juvenile Officer simply did not inquire about the matter. Juvenile Officer conceded at oral arguments before this Court that she did not ask the troopers if rolling papers were found in Juvenile's car or in his backpack. Juvenile Officer admits this was an "oversight" on her part.[10] Further, Exhibit 1 was not admitted into evidence until after the adjudication hearing was concluded.[11] Troopers at the adjudication hearing did, however, testify that they found Juvenile in possession of a digital scale and three to four bricks of turf-wrapped bricks, among other things.

---

[9] The purpose of an adjudication hearing, when a juvenile is charged with an act that would constitute a crime if committed by an adult, is to permit the fact finder to determine whether the allegations contained in the petition are established beyond a reasonable doubt. *P.D.E. v. Juv. Officer*, 669 S.W.3d 129, 132 (Mo. banc 2023); *A.L.H. v. Juv. Officer*, 676 S.W.3d 484, 487 (Mo. App. W.D. 2023); *In Int. of J. L. P.*, 600 S.W.2d 47, 50 (Mo. App. E.D. 1980).

[10] Juvenile Officer's concession easily could have been avoided by simply inquiring of the troopers who testified at the adjudication hearing to the other contraband seized, introducing the rolling papers into evidence, or offering the police report.

[11] Juvenile Officer asserts Exhibit 1 includes a narrative by a trooper of the items the troopers found when searching Juvenile's car. Juvenile Officer asserts the items listed includes "four wrapped packages containing rolling papers." Juvenile Officer further asserts the exhibit includes the trooper's report stating that the "lot of cell phones and rolling papers" were placed into evidence under property record # …." Juvenile Officer did not seek to admit the exhibit into evidence until after the conclusion of the adjudication hearing, after the circuit court had ruled on Juvenile's motion for judgment of acquittal and pronounced adjudication. Juvenile Officer conceded that she did not move to reopen the evidence. Juvenile, however, did not object to the belated timing of the admission. Instead, Juvenile raised a confrontation clause and hearsay objection. Juvenile raises no point on appeal alleging error in the belated admission of the exhibit. Even if this Court determined the circuit court erred in receiving Exhibit 1 into evidence, on this unpreserved issue Juvenile must show manifest injustice or a miscarriage of justice from the belated admission. Rule 30.20. This would not decide the issue, as Exhibit 1 is not before us, for us to verify its contents. Counsel for Juvenile, at oral argument before this Court, recognized Juvenile's duty to file the record on appeal but explained that he did not file the exhibit because he did not believe the exhibit was in evidence and thus could not be considered by this Court. But the exhibit was admitted into evidence. The circuit court plainly and clearly announced that "Exhibit 1 … will be entered into evidence in this cause." Usually, when an appellant fails to file exhibit, we presume the exhibit is unfavorable to him. However, we dispose of this point on different grounds.

"The State must prove the offense as charged." *State v. King*, 674 S.W.3d 218, 228 (Mo. App. W.D. 2023). "Where the act constituting the crime is specified in the charge, the State is held to proof of that act, and the defendant may be convicted only on the basis of that act." *Id*. The approved pattern charge for the offense of possession of drug paraphernalia, Missouri Approved Charges-Criminal 25.22, requires that the drug paraphernalia be specified in the charge. Likewise, the jury instruction for possession of drug paraphernalia requires proof of the specific item of drug paraphernalia. MAI-CR 4th 25.22. Here the Second Amended Petition alleged Juvenile possessed rolling papers. Juvenile Officer arguably did not prove rolling papers. However, in arguing his motion for judgment of acquittal regarding the rolling papers, Juvenile's defense was not that he did not knowingly possess the drug paraphernalia rolling papers but rather such paraphernalia is now legal pursuant to a recent amendment to the Missouri Constitution generally permitting recreational marijuana. Juvenile implicitly admits that he possessed paraphernalia as alleged in Section 5.g of the Second Amended Petition. Such admission constituted grounds for the circuit court to deny Juvenile's motion for judgment of acquittal and to pronounce adjudication.

Additionally, though Juvenile has framed his argument as a sufficiency of the evidence argument, it is at most an unpreserved issue of variance in that the Second Amended Petition varied from the evidence presented at judication hearing. Juvenile did not object to the variance between the facts alleged in the Second Amended Petition and the facts proven at the hearing, thus our review is for plain error. Rule 30.20; *King*, 674 S.W.3d at 229.

In order for a variance to amount to reversible error, Juvenile must be prejudiced. *King*, 674 S.W.3d at 229. Juvenile cannot make that showing, let alone the greater burden of showing a manifest injustice or a miscarriage of justice, which is required to obtain relief under plain-error review. Rule 30.20. Manifest injustice or miscarriage of justice means the error "was outcome

8

determinative and undermines faith in the criminal justice system." *State v. Jackson-Kuofie*, 646 S.W.3d 312, 317 (Mo. App. W.D. 2022).

The purpose of a charging document is to enable the accused to make his defense and to enable him to assert double jeopardy in bar of a further prosecution. *King*, 674 S.W.3d at 229. Juvenile must demonstrate he would have been better able to defend his case had the Second Amended Petition not varied from the evidence presented at trial. *Id.* at 230. Juvenile has not demonstrated his defense was impaired by any variance. Nor do we perceive any impairment. Again, Juvenile's theory of defense was not that he did not knowingly possess drug paraphernalia but that such paraphernalia is now legal.

Moreover, in responding to Juvenile's motion for judgment of acquittal, Juvenile Officer argued there was testimony regarding a digital scale and marijuana containers/packaging material, and that these were drug paraphernalia. When the circuit court asked whether Juvenile had any response, counsel demurred, "I don't, no." Counsel did not object to the variance. Nor did counsel object or dispute the admission of that evidence. Hearing no further argument in support of Juvenile's motion for judgment of acquittal, the circuit court could reasonably infer that counsel's response was an acknowledgement that sufficient evidence of Juvenile's possession of drug paraphernalia indeed existed.

In short, Juvenile has not demonstrated that the language of the Second Amended Petition and the facts ultimately proven was an impairment to his defense. Under the particular circumstances of this case, we cannot say the circuit court erred in denying Juvenile's motion for judgment of acquittal and finding that Juvenile committed what would be, were he an adult, the class D misdemeanor of unlawful possession of drug paraphernalia. We deny Point I.

**Point II:  Possession of a Controlled Substance (Marijuana)**

9

Juvenile alleges the circuit court erred in overruling his motion for judgment of acquittal and entering a judgment finding he committed what would be, were he an adult, the class D felony of possession of a controlled substance. Juvenile alleges there was no evidence that he possessed more than 35 grams of marijuana.

Section 579.015.1 provides that a person commits the offense of possession of a controlled substance if that person "knowingly possesses a controlled substance, except as authorized by this Chapter or Chapter 195." Thus, to sustain a conviction for possession of a controlled substance, the State (Juvenile Officer) must prove conscious and intentional possession of the controlled substance, either actual or constructive, and awareness of the presence and nature of the substance. *State v. Brown*, 661 S.W.3d 27, 36 (Mo. App. S.D. 2023). Juvenile Officer in Section 5.f of the Second Amended Petition alleged that Juvenile "knowingly possessed marijuana, a controlled substance, knowing of its presence and nature, and the amount of marijuana was more than 35 grams."

Juvenile challenges the circuit court's ruling in two respects. First, Juvenile argues there was no evidence introduced at the adjudication hearing that he possessed the controlled substance marijuana. Second, Juvenile argues that even if the circuit court could conclude he possessed the controlled substance marijuana, there was no evidence introduced at the adjudication hearing establishing that he possessed more than 35 grams of marijuana. Juvenile does not allege that Juvenile Officer failed to prove actual or constructive possession, or that Juvenile Officer failed to prove Juvenile's awareness of the presence and nature of the substance. Juvenile only challenges the evidence regarding the substance itself and the weight of that substance. We address each of Juvenile's contentions in turn.

***Evidence of Marijuana***

Juvenile first argues insufficient evidence existed to support a finding that he possessed the controlled substance marijuana. Juvenile contends this for two reasons: first, because no chemical analysis of the substance in the turf-wrapped bricks found in his car was introduced into evidence; and second, because Criminalist, who tested the plant material, only identified the tested material as being part of the plant genus cannabis and did not specifically identify the plant material as "marijuana." Juvenile posits that the material could have been industrial hemp, a noncontrolled substance. Juvenile thus contends the circuit court erred in concluding that Juvenile Officer had met its burden to prove he possessed the controlled substance marijuana beyond a reasonable doubt.

Juvenile acknowledges Trooper A.P. testified that he searched the car Juvenile was driving and found three to four turf-wrapped bricks under the spare tire. Juvenile also acknowledges Trooper A.P. testified that he cut open one brick and immediately recognized the odor of marijuana. Juvenile argues, however, that no chemical analysis of the substance contained in the bricks was introduced into evidence. Thus, Juvenile contends that one cannot say that he possessed the controlled substance marijuana based on the bricks alone. Indeed, the offense of possession of a controlled substance requires the State to prove by way of chemical analysis that the substance at issue is in fact a controlled substance. *Schilling v. State*, 628 S.W.3d 452, 458 (Mo. App. E.D. 2021).

Juvenile also does not dispute that Criminalist from the Missouri State Highway Patrol Crime Laboratory, tested Item 2.0932.002, which was identified as three bags of plant material. Juvenile acknowledges that Criminalist identified the plant material in all three bags as being part of the plant genus cannabis. Juvenile argues, however, that Criminalist did not specifically identify the plant material as "marijuana." Juvenile asserts this omission should have precluded the circuit

11

court from concluding that he possessed a controlled substance, marijuana. Juvenile argues that the plant genus cannabis includes both marijuana, a controlled substance, and industrial hemp, a noncontrolled substance. Juvenile argues that because the plant genus cannabis includes both controlled and non-controlled substances, evidence that plant material belongs to the genus cannabis is not, standing alone, enough to prove the plant material is the controlled substance marijuana. He claims the circuit court's finding rested on a forced and unreasonable inference that Item 2.0932.002 consisted of only the controlled substance marijuana.

Juvenile's contention that the material could have been industrial hemp is foreclosed by Section 579.015.5. That statutory section places the burden on Juvenile, as defendant, to establish the applicability of any exceptions to guilt in Chapter 579. *State v. Fox*, 658 S.W.3d 186, 193-94 (Mo. App. W.D. 2022). Section 579.015.5 states:

> In any complaint, information, or indictment, and in any action or proceeding brought for the enforcement of any provision of this Chapter or Chapter 195, it shall not be necessary to include any exception, excuse, proviso, or exemption contained in this Chapter or Chapter 195, and *the burden of proof of any such exception, excuse, proviso, or exemption shall be upon the defendant*.

(Emphasis added). Thus, Juvenile Officer bore no burden to prove that the substance was *not* industrial hemp. Juvenile Officer's only burden was to establish the Juvenile "knowingly possesse[d] a controlled substance." Section 579.015.1; *Fox*, 658 S.W.3d at 194. Juvenile had the burden of proving that the plant material in the three bags, Item 2.0932.002, was not the controlled substance marijuana but was, instead, some legal substance, like legal industrial hemp, as he claims. Juvenile, however, did not present any evidence of any such exception or cross examine the witnesses as to whether the plant material seized and tested was industrial hemp of the legal variety. No such argument was made to the circuit court. Instead, counsel for Juvenile, in argument to the circuit court on Juvenile's motion for judgment of acquittal, stated that Criminalist

"testified that the actual plant material *identified as marijuana* weighed about 40 grams." (Emphasis added). We find the foregoing statement by counsel establishes that the evidence, now complained of, was before the circuit court, viewed and relied upon by the parties, and sufficient if believed by the court.[12]

We hold the scope of the record supports that Juvenile Officer presented sufficient evidence from which circuit court could find, beyond a reasonable doubt, that Juvenile indeed possessed the controlled substance marijuana. Given Juvenile's flight, the secreted location of the turf-wrapped bricks, and Trooper A.P.'s observation that the turf-wrapped bricks smelled of marijuana, a reasonable inference exists to conclude that the material in the bricks was the controlled substance marijuana. *See State v. Fuente*, 871 S.W.2d 438, 444 (Mo. banc 1994) (noting sufficient evidence to prove defendant possessed marijuana where odor of marijuana permeated interior of car). However, the offense of possession of a controlled substance still requires the State to prove by way of chemical analysis that the substance at issue is in fact a controlled substance. *Schilling*, 628 S.W.3d at 458. We do not believe it is a forced and unreasonable inference to conclude that the plant material in the three bags, Item 2.0932.002, testified to by Criminalist, was the material from the bricks. The plant material from all three bags was tested and identified as being part of the plant genus cannabis. Moreover, counsel acknowledged that evidence existed that the actual plant material tested was identified as marijuana.

---

[12] The transcript shows that the report created by Criminalist was projected on a television screen during the testimony of the Criminalist at the adjudication hearing. The report was created after Criminalist conducted lab tests on the three bags of plant material and other items of evidence from this case. The transcript reveals Item 2.0932.002 was shown on that report, as it was projected in court. Juvenile Officer, at oral arguments before this Court, represented that the document projected was Exhibit 2, consisting of lab reports, including the report of Criminalist. Juvenile Officer further asserts that Criminalist's report states that the total weight of the plant material which Criminalist tested and identified as part of the plant genus cannabis was "40.32 grams plus or minus 0.15 grams." The projected document was never expressly identified as Exhibit 2. However, the projected document was testified to and referred to by both parties during the adjudication hearing. We view counsel's statement as an acknowledgment of what was depicted on the report and projected in court. While Juvenile Officer did not move to admit Exhibit 2 into evidence until after the adjudication hearing, the scope of the record is sufficient to support our disposition.

### *Evidence of Weight*

Secondly, Juvenile argues that even if the circuit court could conclude he possessed marijuana, there was no evidence introduced at the adjudication hearing establishing that he possessed more than 35 grams of marijuana. This bears on the classification of the offense. Possession of greater than thirty-five grams of marijuana is a class D felony. Section 579.015.2.

Juvenile contends there was "simply no evidence of weight." However, counsel for Juvenile, in argument to the circuit court on Juvenile's motion for judgment of acquittal, stated Criminalist "testified that the actual plant material identified as marijuana weighed about 40 grams." Again, we find this statement by counsel supports a reasonable inference that the evidence was at least before the circuit court for consideration.

In sum, we hold sufficient evidence was adduced at the adjudication hearing from which the circuit court, as the finder of fact, could have reasonably found that Juvenile possessed the controlled substance marijuana. The circuit court thus did not err in overruling Juvenile's motion for judgment of acquittal and finding that Juvenile committed acts that, if committed by an adult, would have constituted unlawful possession of a controlled substance. Further, Juvenile acknowledged the evidence showed the weight was over 35 grams, and thus pursuant to Section 579.015.2, Juvenile's possession here was a class D felony. The circuit court did not err in so finding. We deny Point II.

### Point III: Possession of a Controlled Substance (THC)

Point III addresses the second possession of a controlled substance count. Juvenile alleges the circuit court erred in overruling his motion for judgment of acquittal and entering a judgment finding he committed what would be, were he an adult, the class D felony of possession of a

14

controlled substance (THC).  Juvenile alleges there was no evidence that he possessed more than 35 grams of THC.

Again, Section 579.015.1 provides that a person commits the offense of possession of a controlled substance if that person "knowingly possesses a controlled substance, except as authorized by this Chapter or Chapter 195."  Thus, to sustain a conviction for possession of a controlled substance, the State (Juvenile Officer) must prove conscious and intentional possession of the controlled substance, either actual or constructive, and awareness of the presence and nature of the substance.  *Brown*, 661 S.W.3d at 36.  Juvenile Officer in Section 5.e of the Second Amended Petition alleged that Juvenile "knowingly possessed THC, a controlled substance, knowing of its presence and nature."

As with the possession of marijuana count, Juvenile challenges the circuit court's ruling in two respects.  First, Juvenile argues there was no evidence introduced at the adjudication hearing that he even possessed the controlled substance THC.  Second, Juvenile argues that even if the circuit court could conclude he possessed THC, there was no evidence introduced at the adjudication hearing establishing that he possessed more than 35 grams of THC, which Juvenile contends is necessary to find that he committed what would have been the class D felony of possession of a controlled substance.  Juvenile contends the most the circuit court could have found is that he committed what would have been, were he an adult, the class D misdemeanor of possession of controlled substance.  As before, Juvenile does not allege that Juvenile Officer failed to prove actual or constructive possession, or that Juvenile Officer failed to prove Juvenile's awareness of the presence and nature of the substance.  Juvenile only challenges the evidence regarding the substance itself and the proper classification of the offense.  We address each of Juvenile's contentions in turn.

15

### *Evidence of THC*

Juvenile acknowledges Trooper R.W. testified he found a sealed package in Juvenile's backpack that stated the items inside the package contained THC. Juvenile further acknowledges Criminalist testified Item 2.0932.006 consisted of three cartridges with thick liquid and that she tested the liquid from one of those cartridges and the tested liquid contained THC. Juvenile argues, however, that the circuit court's conclusion that he possessed the controlled substance THC relies on an unreasonable, forced inference that Item 2.0932.006 is the same item as the package found in Juvenile's backpack by Trooper R.W. Juvenile thus contends the circuit court erred in concluding Juvenile Officer had met its burden to prove that Juvenile possessed the controlled substance THC beyond a reasonable doubt.

Again, the offense of possession of a controlled substance requires the State to prove by way of chemical analysis that the substance at issue is in fact a controlled substance. *Schilling*, 628 S.W.3d at 458. Thus, a finding of possession could not rest solely on testimony that Juvenile possessed a package that stated the items inside the package contained THC. Juvenile claims it is unreasonable to infer that the package found in his backpack is the same as the cartridge tested at the crime lab. We are not convinced. Items seized were tested and one of the items tested was Item 2.0943.006. The testimony regarding Item 2.0943.006 is sufficient, in and of itself.

The two criminalists both testified as to the practices of receiving evidence at the Missouri State Highway Patrol. The criminalists collectively explained that once a trooper seizes evidence, the trooper submits that evidence to their evidence officer. The evidence officer then brings the evidence to the crime laboratory with a laboratory analysis request. The evidence is then submitted into the crime lab and a case number is created. As here, each item of evidence within the case gets its own unique bar code and lab number. The bar code is how the lab tracks the chain of

custody, electronically, as to where the evidence is located and who is in the possession of the evidence. Once the lab applies a bar code with a lab number to each item of evidence, the evidence is placed in a secure evidence locker. The evidence remains stored in the secured locker until it is ready to be tested. Access to the locker is limited.

The testimony and evidence support the conclusion that the usual procedure for chain of custody was followed in this case. There is nothing in the record to suggest otherwise. Both criminalists testified that once the items from this case were received in the crime lab, they remained under the continuous care, custody, and control of the lab. The record establishes that items were assigned a lab number. [13]

Criminalist conducted testing on evidence in this case. As part of that task, Criminalist tested an item labeled Item 2.0943.006. Juvenile does not dispute that Item 2.0943.006 was an item of evidence in the case. Item 2.0943.006 consisted of three cartridges containing thick liquid. Testing on one of those cartridges showed the thick liquid contained THC. This is sufficient to show Juvenile's possession of the controlled substance THC, without testing all three cartridges.

We find that sufficient evidence was adduced from which the circuit court could have found that Juvenile possessed the controlled substance THC beyond a reasonable doubt.

### Classification of Offense & Evidence of Weight

Secondly, Juvenile argues that even if the circuit court could conclude that he possessed THC, the circuit court nonetheless erred in finding that he committed what would be, were he an adult, the *class D felony* of possession of a controlled substance. Citing to the recent amendment to the Missouri Constitution and *R.M.S. v. Lafayette Cty. Prosecuting Attorney*, 696 S.W.3d 401 (Mo. App. W.D. 2024), Juvenile argues that THC is synonymous with marijuana. He thus asserts

---

[13] Other items of evidence from this case included items numbered 2.0932.002, 2.0932.003, 2.0932.004, and 2.0932.005.

it must be proved that he possessed 35 grams or more of THC before the circuit court could find that he committed what would have been, were he an adult, the *class D felony* of possession of a controlled substance. Juvenile notes that no evidence of the weight of THC was adduced at the adjudication hearing from which the circuit court could have concluded that he possessed any particular weight, let alone more than 35 grams. Juvenile contends the most the circuit court could have found is that he committed what would have been, were he an adult, the *class D misdemeanor* of possession of controlled substance.

Juvenile is correct regarding the lack of evidence of the weight of THC in his possession. Criminalist testified that the liquid she tested from the cartridge contained THC. She did not testify as to the weight of that substance. There is no evidence of the weight of THC anywhere in the record. However, we hold that this does not mean Juvenile should receive a lower classification of offense. We find no error in finding Juvenile's offense to be a class D felony.

The Missouri criminal code is the basis for charging juvenile delinquency offenses. Juvenile Officer must charge the offense of possession of a controlled substance pursuant to the statutory language of Section 579.015 and the corresponding Missouri Approved Charges-Criminal. Rule 113.01. Section 579.015.1 provides that a person commits the offense of possession of a controlled substance if that person "knowingly possesses a controlled substance, except as authorized by this Chapter or Chapter 195." Section 579.015.2 makes the possession of any controlled substances, as identified in Chapter 195, a class D felony but creates an exception for the possession of thirty-five grams or less of marijuana or any synthetic cannabinoid. Possession of more than ten grams but thirty-five grams or less of marijuana or any synthetic cannabinoid is a class A misdemeanor under Section 579.015.3. Possession of not more than ten grams of marijuana or any synthetic cannabinoid is a class D misdemeanor under Section

18

579.015.4. Juvenile Officer accordingly charged Juvenile pursuant to Section 579.015, alleging Juvenile "knowingly possessed THC, a controlled substance, knowing of its presence and nature."

Historically THC has not been treated the same as marijuana. Possession of THC has been considered a separate offense from possession of marijuana. *R.M.S.*, 696 S.W.3d at 404; *see also*, *Fox*, 658 S.W.3d at 190-92. Section 195.017, which lists the controlled substances, lists THC as a separate controlled substance from marijuana. *See* Section 195.017.2(5)(nn) (THC); Section 195.017.2(5)(ff) (marijuana). "[I]n listing THC as a separate controlled substance, Section 195.017 deliberately treats THC not as marijuana or as a part of the cannabis plant but as a substance or compound found in both cannabis and synthetic cannabinoids." *Fox*, 658 S.W.3d at 190.

We find the *Fox* case instructive, as it extensively discussed the differences between, and the different statutory treatments of marijuana and THC. *State v. Fox*, 658 S.W.3d 186 (Mo. App. W.D. 2022). Defendant *Fox* appealed from his conviction under Section 579.015 of the class D felony of possessing the controlled substance THC. *Id*. at 188. Fox brought a challenge to the sufficiency of the charging document. *Id*. at 189-90. Fox asserted that possession of THC is the same offense as possession of marijuana because THC is present in marijuana. Therefore, he argued, similar to here, that (1) a felony conviction for possession of THC is subject to the same weight exception as marijuana, requiring possession of more than 35 grams of THC, and (2) because the information did not address the amount of THC he possessed, it failed to state a crime and the trial court lacked jurisdiction. *Id*. at 189.

The Western District of this Court rejected Fox's challenge. The Court first noted that Section 195.010 defines words and phrases used in Chapters 195 and 579. *Id*. at 190. Section 195.010(28) defines marijuana. Section 195.010 does not define the term THC. This, however,

did not mean that THC was synonymous with marijuana. The Court further noted that marijuana and THC are separately listed as Schedule I controlled substances in Section 195.017. *Id*. The Court found that in separately listing THC as a controlled substance, Section 195.017 deliberately treats THC not as marijuana. *Id*. The Court reasoned that to treat THC as marijuana and thus subject to the marijuana exceptions in 579.015 would require the Court "to ignore specific language in the statutes, rending that language either nonsensical or surplusage." *Id*. at 191. Continuing, the Court stated "[i]f THC were meant to be treated the same as marijuana, there would have been no need to list it as a separate controlled substance in Section 195.017. *Id*. "There was no reason for the legislature to include THC in Section 195.017 if the legislature meant for it to be treated as marijuana." *Id*. at 192. Further, the Court reasoned that "if THC were subject to the same weight exception as marijuana, THC would have been listed in the exception set out in Section 579.015.2." *Id*. at 191. Thus, possession of THC is a class D felony, and the exceptions for weight of marijuana are not applicable. Concluding, the Court reasoned that "it makes sense that, by recognizing THC as a separate controlled substance and not including THC within the weight exception in Section 579.015.2, the legislature intended to treat THC differently than marijuana and to make possession of THC, without a weight exception, a class D felony." *Id*. at 192.

Juvenile contends that under the recent amendment to the Missouri Constitution, THC is now synonymous with marijuana. He thus argues the charge in the Second Amended Petition, alleging possession of THC, is nothing more than an allegation that he possessed marijuana, and thus possession of over 35 grams must be proven in order for the offense to be a class D felony.

20

The people of Missouri, in November of 2022, passed Amendment 3, the marijuana legalization initiative, which was incorporated as Article XIV, section 2 of the Missouri Constitution.[14] Amendment 3 defined "marijuana" as follows:

> "Marijuana" or "marihuana" means Cannabis indica, Cannabis sativa, and Cannabis ruderalis, hybrids of such species, and any other strains commonly understood within the scientific community to constitute marijuana, as well as ***resin extracted from the marijuana plant and marijuana-infused products***. "Marijuana" or "marihuana" do not include industrial hemp, as defined by Missouri statute, or commodities or products manufactured from industrial hemp.

Article 14 Section 2.2(13) (Emphasis added).

Little in the line of cases exists following this amendment. In 2023, the Western District of this Court in *R.M.S.* addressed the amendment's definition of marijuana in the context of an expungement case. *R.M.S. v. Lafayette Cty. Prosecuting Attorney*, 696 S.W.3d 401 (Mo. App. W.D. 2024). After Amendment 3 was adopted and became effective, petitioner R.M.S. brought a petition for expungement of convictions for possession of THC and possession of marijuana. Amendment 3, among other things, provides a mechanism for those who had previously been convicted of certain marijuana-related offenses to have their convictions expunged. *R.M.S.*, 696 S.W.3d at 403; Article 14 Section 2.10 (7)(a), (7)b), and (8)(a). The trial court granted R.M.S.'s petition for expungement for the marijuana offense, but denied R.M.S.'s petition for expungement for the THC offense. *R.M.S.*, 696 S.W.3d at 403. The trial court found that THC was "a separate controlled substance than marijuana and is therefore not a 'marijuana offense' and therefore possession of THC was not subject to the expungement provisions of Amendment 3. *Id.* at 407. On appeal, the Western District of this Court found that the trial court's legal conclusion was incorrect and held that small amounts of marijuana-derived THC are eligible for expungement under Amendment 3, as it constitutes a "resin extracted from the marijuana plant" and products made from it constitute

---

[14] The amendment became effective December 8, 2022, before the date at issue here.

21

"marijuana-infused products." *Id*. In other words, the Court found that marijuana-derived THC falls within the amendment's definition of marijuana for purposes of expungement.

Juvenile seeks to apply the definition of marijuana from Amendment 3, and the finding of *R.M.S.*, to Section 579.015. Our case, however, is distinguishable from *R.M.S.* *R.M.S.* was an expungement case, brought pursuant to the provisions of the amendment. Thus, *R.M.S.* was operating within and dealing with the amendment itself, which allows individuals with certain marijuana-related convictions to petition to have their records expunged. The definition in the amendment no doubt applied, and that is what the Court followed. We, on the other hand, are addressing the different issue of how an alleged offense under Section 579.015 should be charged, proven, and classified in a juvenile case.

Juvenile would have us transfer Amendment 3's definition of marijuana outside the amendment's provisions. Again, Juvenile Officer must charge the offense of possession of a controlled substance pursuant to the statutory language of Section 579.015, which makes the possession of controlled substances, as identified in Chapter 195, a felony but creates an exception for the possession of relatively small amounts of marijuana or any synthetic cannabinoid. Section 195.010 defines words and phrases as used in Chapters 195 and 579, "unless the context otherwise requires." The context here does not otherwise require. Though Amendment 3 defined marijuana for purposes of the amendment, the amendment's language does not say the amendment's definition applies to the criminal code or that it overrules and supplants the definitions in Section 195.010, or the applicability of those definitions to Chapter 579. Thus, the definitions in Section 195.010 apply here.

The definition of marijuana in 195.010 is different than that in Amendment 3. Particularly, Section 195.010 (28) provides that marijuana does not include resins extracted from any part of

22

the plant genus cannabis.[15]  At the time Juvenile was charged, THC and marijuana were separately-listed controlled substances under Section 195.017.  It is still that way.  The constitutional amendment went into effect in December of 2022.  The General Assembly of Missouri has had the time and opportunity to change the definition of marijuana in Section 195.010(28) and/or the list of controlled substances in Section 195.017, to combine marijuana and THC.  Yet, it has not done so.  To this day, they are still treated differently in the statutes, as has been the case historically.

As pointed out in *Fox*, to read the definition of marijuana in Section 195.010 as including THC, such that THC is subject to the weight exceptions in Sections 579.015.2, 579.015.3, and 579.015.4, would require us to ignore specific language in the statutes.  Such a reading would be expressly contrary to the definition set out in Section 195.010 (28).  Such a reading would render language in Section 195.017, listing THC as a separate controlled substance, either nonsensical or surplusage.  If THC were meant to be treated the same as marijuana, there would have been no need to list it as a separate controlled substance in Section 195.017.  *Fox*, 658 S.W.3d at 191.  "There was no reason for the legislature to include THC in Section 195.017 if the legislature meant for it to be treated as marijuana." *Id*. at 192

As explained in *Fox*, there is good reason for the legislature to treat the two substances differently.  Different amounts of marijuana and THC give different hallucinogenic properties.  One may need a greater quantity of marijuana to have same hallucinogenic property as a small

---

[15] "Marijuana" is defined in Section 195.010(28) as:
> all parts of the plant genus Cannabis in any species or form thereof, including, but not limited to Cannabis Sativa L., except industrial hemp, Cannabis Indica, Cannabis Americana, Cannabis Ruderalis, and Cannabis Gigantea, whether growing or not, the seeds thereof, the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin. It does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil or cake, or the sterilized seed of the plant which is incapable of germination;

quantity of THC. *Id.* "Thus, it makes sense that the possession of a small amount of marijuana (35 grams or less) is not a felony, but possession of THC, regardless of the quantity, is." *Id.*

In conclusion, sufficient evidence existed from which the circuit court could have found that Juvenile possessed the controlled substance THC beyond a reasonable doubt. Further, we hold the definition of marijuana from Amendment 3 does not apply here. In harmonizing Sections 195.010 and 195.017 along with Chapter 579, for purposes of charging under Chapter 579, marijuana and THC are not synonymous; they are separate controlled substances and different possession offenses. Accordingly, under 579.015, possession of THC is a class D felony, and the exceptions for weight of marijuana are not applicable. Consequently, no evidence regarding the weight of THC was needed in this case. The circuit court did not err in finding that Juvenile possessed THC and thus committed what would be, were he an adult, the class D felony of possession of a controlled substance. We deny Point III.

**Point IV: Unlawful Use Of A Weapon**

Juvenile alleges the circuit court erred in overruling Juvenile's motion for judgment of acquittal and entering a judgment finding Juvenile committed what would be, were he an adult, the class E felony of unlawful possession of a weapon. Juvenile alleges there was no evidence that he possessed a felony amount of a controlled substance.

Section 571.030 provides that a person commits the offense of unlawful use of a weapon if that person knowingly "[p]ossesses a firearm while also knowingly in possession of a controlled substance that is sufficient for a felony violation of section 579.015." Section 571.030.1(11). Juvenile Officer in Section 5.c of the Second Amended Petition alleged that Juvenile "knowingly possessed a loaded Ruger 9mm handgun, a firearm, while also possessing tetrahydrocannabinol (THC) and 35 grams or more of marijuana, a controlled substance…." Juvenile does not argue

24

that Juvenile Officer failed to prove that he knowingly possessed a Ruger 9mm handgun, a firearm. Juvenile only argues the evidence adduced at the adjudication hearing did not establish that he possessed a felony amount of a controlled substance. We addressed this contention in Points II and III, above. Given the disposition of those points, we deny Point IV.

### Conclusion

We affirm the circuit court's judgment.

_____
Angela T. Quigless, J.

James M. Dowd, P.J., and
Cristian M. Stevens, J., concur.

25